IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHARLES FROSS, et al. )
          Plaintiffs, )
                                )
     v.                         )     Civil Action No.  08-1405
                                )
COUNTY OF ALLEGHENY,            )
          Defendant.            )
                                )

MEMORANDUM OPINION

Gary L. Lancaster,                           March 20, 2009
District Judge

     This is a civil rights action challenging an Allegheny
County of Pennsylvania ordinance that restricts the residency of
registered sex offenders.  Plaintiffs, a group of convicted sex
offenders whose residency has been affected by the ordinance, allege
that the ordinance violates various constitutional guarantees, the
Fair Housing Act, and state law.  Plaintiffs seek an order enjoining
enforcement of the ordinance, as well as costs and attorneys' fees.

     The County agreed not to enforce the ordinance until this
matter was resolved.[1]  Thereafter, the court consolidated resolution
of plaintiffs' motion for a preliminary injunction with a ruling on
the ultimate merits of the case.  The court directed the parties to
file cross motions for summary judgment on dispositive state law

---

[1]Apparently, the Pennsylvania Board of Probation and Parole
is still requiring that home plans comply with the ordinance.
See Menifee v. McVey, Civil Action No. 09-0104 (W.D. Pa. 2009).
However, that issue has not been raised here.

issues [doc. nos. 20, 21, 22, 23, 26, 27, and 29].[2]  For the reasons set forth below, we find that the Allegheny County ordinance is preempted by state law and we grant plaintiffs' motion for summary judgment.

I.    BACKGROUND

The County of Allegheny, Pennsylvania is a Second Class County, which has adopted home rule.  16 P.S. § 3101, et seq.; 53 Pa. Cons. Stat. § 2961, et seq.  The fifteen member County Council exercises the legislative function of the County.  On October 23, 2007, the County Council passed the residency restriction ordinance at issue in this case: No. 39-07-OR entitled Residency Requirements; Registered Sex Offenders.  Under the ordinance, individuals required to register pursuant to what is commonly known as Megan's Law, 42 Pa. Cons. Stat. § 9791, et seq., cannot live within 2,500 feet (or approximately one-half mile) of any child care facility, community center, public park or recreation facility, or school.  The purported purpose of the ordinance is to provide for the safety of Allegheny County residents, particularly children.

---

[2]  This court has jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367(a).  We address the state law issues first in accordance with the "fundamental and longstanding principle of judicial restraint requir[ing] that courts avoid reaching constitutional questions in advance of the necessity of deciding them."  Lyng v. N.W. Indian Cemetery Protective Ass'n, 485 U.S. 439, 445 (1988).

Megan's Laws were passed after 7 year old Megan Kanka was sexually assaulted and murdered in 1994 by a neighbor who, unknown to her family, had been previously convicted of sexual offenses against children. The crime gave impetus to laws for the mandatory registration of sex offenders and corresponding community notification. Smith v. Doe, 538 U.S. 84, 89 (2003). By 1996, every state, the District of Columbia, and the Federal Government had enacted some version of Megan's Law. Id. at 90.

Pennsylvania's version of Megan's Law, among other things, requires persons convicted of certain enumerated crimes to report their residence and employment, and any changes thereto, to the Pennsylvania State Police. 42 Pa. Cons. Stat. §§ 9795.1, 9795.2. However, not all of the crimes listed in Pennsylvania's Megan's Law are sexual offenses against children. Rather, registration is required under Megan's Law for persons convicted of rape, sexual assault, indecent assault, or involuntary deviate sexual intercourse against any victim, regardless of age. 42 Pa. Cons. Stat. § 9795.1.

Returning to the provisions of the Allegheny County ordinance, the County published a map on its website depicting the areas where sex offenders could and could not reside. The map reflects that the vast majority of Allegheny County falls within the restricted zone, with permissible areas generally confined to outlying, suburban communities such as Sewickley Heights, Bell Acres, South Fayette, Collier, and West Deer. The map does not

indicate the topography of the permissible areas, nor whether residential housing is permitted or available in them.

The ordinance, however, imposes no geographical restrictions on a registered sex offender's ability to work, conduct business, seek medical treatment, attend events, or socialize in these same places where children congregate. Moreover, the ordinance applies to any individual required to register pursuant to Megan's Law, without regard to whether that person's offense involved a minor, or whether Pennsylvania has deemed that person to be a "sexually violent predator" who is likely to reoffend.

II. LEGAL AUTHORITY

    A.  Home Rule

Municipalities are creatures of the state and have no inherent powers of their own. Naylor v. Twp. of Hellam, 773 A.2d 770, 773 (Pa. 2001). Municipalities "possess only such powers of government as are expressly granted to [them] and as are necessary to carry the same into effect." Appeal of Gagliardi, 163 A.2d 418, 419 (Pa. 1960). Therefore, a municipality ordinarily lacks the power to enact ordinances except as authorized by statute, and any ordinance not in conformity with its enabling statute is void. Taylor v. Abernathy, 222 A.2d 863, 865 (Pa. 1966).

4

However, the Home Rule doctrine allows for autonomous self-governance relative to municipal affairs. City of Philadelphia v. Schweiker, 858 A.2d 75, 82 (Pa. 2004). The Pennsylvania Constitution guarantees the right of home rule, which occurs pursuant to enabling legislation at the state level. Pa. Const. art. IX, § 2; 16 P.S. § 6101-C. "Under the concept of home rule, ... the locality in question may legislate concerning municipal governance without express statutory warrant for each new ordinance; rather, its ability to exercise municipal functions is limited only by its home rule charter, the Pennsylvania Constitution, and the General Assembly." Schweiker, 858 A.2d at 84. Grants of municipal power "shall be liberally construed in favor of the municipality." County of Delaware v. Twp. of Middletown, 511 A.2d 811, 813 (Pa. 1986) (quoting 53 P.S. § 1-301, now 52 Pa. Cons. Stat. § 2961).

Thus, "[i]n analyzing a home rule municipality's exercise of power, ... we begin with the view that it is valid absent a limitation found in the Constitution, the acts of the General Assembly, or the charter itself, and we resolve ambiguities in favor of the municipality." Id. However, and of critical significance in this case, home rule municipalities cannot legislate in a way that contradicts a state statute. Holt's Cigar Co., Inc. v. City of Philadelphia, 952 A.2d 1199, 1202-03 (Pa. Commw. Ct. 2008).

5

B.   Preemption

The preemption doctrine establishes a priority between laws enacted at various levels of government.   In Pennsylvania, a local ordinance may be preempted by a state law under one of three theories: express preemption, implied (or field) preemption, and conflict preemption.   Nutter v. Dougherty, 938 A.2d 401, 404 (Pa. 2007).   Where a state statute contains language specifically prohibiting local authority over the subject matter, local ordinances are void under the doctrine of express preemption. Huntley & Huntley, Inc. v. Borough Council of The Borough of Oakmont, 30 WAP 2008 and 31 WAP 2008, 2009 WL 413723, at *7 (Pa. Feb. 19, 2009); Nutter, 938 A.2d at 404.

Preemption of local laws may also be implicit, as where the state regulatory scheme so completely occupies the field that it appears the General Assembly did not intend for supplementation by local regulations.   This is also called field preemption. Huntley, 2009 WL 413723, at *7;   Nutter, 938 A.2d at 409-11. Implied, or field, preemption is very rare in Pennsylvania, and is limited to areas not relevant to this case, such as alcoholic beverages, anthracite strip mining, and banking.   Clarke v. House of Representatives of Commonwealth, 957 A.2d 361, 369 (Pa. Commw. Ct. 2008) (citing Mars Emergency Med. Servs., Inc. v. Township of Adams, 740 A.2d 193 (Pa. 1999) and Nutter v. Dougherty, 938 A.2d 401 (Pa. 2007)).

6

Finally, conflict preemption invalidates any local law that is contradictory to or inconsistent with a state statute. Huntley, 2009 WL 413723, at *7; Nutter, 938 A.2d at 404. It mandates that a local ordinance may not stand as an obstacle to executing, or conflict with, the full purposes and objectives of the General Assembly. Huntley, 2009 WL 413723, at *6. Conflict preemption applies where there is such an actual, material conflict between the state law and the local law that the interests of the wider constituency can only be protected by striking down the local law. United Tavern Owners of Philadelphia v. Sch. Dist. of Philadelphia, 272 A.2d 868, 871 (Pa. 1971).

Under the doctrine, "local legislation cannot permit what a state statute or regulation forbids or prohibit what state enactments allow." Huntley, 2009 WL 413723, at *6 (citing cases); see e.g., Range Resources-Appalachia, LLC v. Salem Twp., 29 WAP 2008, 2009 WL 413748, at *5 n.7 (Pa. Feb. 19, 2009) (finding a direct conflict between state law and a local ordinance where the ordinance forbade what the state law allowed); Pennsylvania Gaming Control Board v. City Council of Philadelphia, 928 A.2d 1255, 1270 (Pa. 2007) (invalidating a local ordinance under conflict preemption because it permitted what state law forbade).

The considerations reflected in these three forms of preemption are alternatively summarized in the Pennsylvania Commonwealth Court's five-part Duff test, under which a reviewing

court asks:

> (1) Does the ordinance conflict with the state law, either because of conflicting policies or operational effect, that is, does the ordinance forbid what the legislature has permitted? [conflict preemption]
>
> (2) Was the state law intended expressly or impliedly to be exclusive in the field? [express preemption or implied/field preemption]
>
> (3) Does the subject matter reflect a need for uniformity? [implied/field preemption]
>
> (4) Is the state scheme so pervasive or comprehensive that it precludes co-existence of municipal regulation? [implied/field preemption]
>
> (5) Does the ordinance stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the legislature? [conflict preemption]

Duff v. Twp. of Northampton, 532 A.2d 500, 505 (Pa. Commw. Ct. 1987). If the answer to any one of these questions is "yes," then the local ordinance will be preempted by the state statute. Liverpool Twp. v. Stephens, 900 A.2d 1030, 1033 (Pa. Commw. Ct. 2006).

The Pennsylvania Supreme Court has not addressed the preemptive effect of state law on sex offender residency restriction ordinances passed by municipalities. In the absence of a reported

decision by the state's highest court addressing the precise issue before it, a federal court applying state substantive law must predict how the state's highest court would rule if presented with the case. See Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000) (citation omitted).

    C.   Sex Offenders in PA: Megan's Law, Probation, and Parole

        1.  Megan's Law

Upon conviction of a crime in Pennsylvania state court, the sentencing court imposes a sentence, which may include a sentence of partial confinement, a sentence of total confinement, or an order of probation. 42 Pa. Cons. Stat. §§ 9754, 9755, 9756. Special provisions, including those setting mandatory minimum sentences of confinement apply to persons convicted of various crimes involving minors. 42 Pa. Cons. Stat. §§ 9718. In addition, individuals committing the crimes listed in Megan's Law are subject to special sentencing considerations, including a 25 year minimum term of incarceration for repeat offenders. 42 Pa. Cons. Stat. § 9718.2.

Where a person has committed one of the crimes specifically listed in Megan's Law, he or she becomes automatically subject to its provisions. 42 Pa. Cons. Stat. § 9791, et seq. The crimes listed in Megan's Law are generally sexual in nature. However, Megan's Law lists not only crimes against children, such

as kidnaping a minor, luring a child into a motor vehicle, incest involving a minor, and sexual abuse or exploitation of children, but also sexual crimes such as rape, involuntary deviate sexual intercourse, sexual assault, and aggravated indecent assault, regardless of the age of the victim. 42 Pa. Cons. Stat. § 9795.1.

Most persons convicted of a Megan's Law crime are required to register their residency and employment with the Pennsylvania State Police for a period of ten years. 42 Pa. Cons. Stat. § 9795.1(a). However, where the person has been convicted of repeated Megan's Law crimes, or is convicted of one of the specifically listed crimes such as rape, involuntary deviate sexual intercourse, sexual assault, aggravated indecent assault, or incest involving a minor under the age of 12, lifetime registration is required. 42 Pa. Cons. Stat. § 9795.1(b). Persons classified as sexually violent predators pursuant to Megan's Law must also register for life. 42 Pa. Cons. Stat. §§ 9795.1(b), 9795.4.

Although Megan's Law is commonly referred to as the sex offender registration law, it does much more than establish a registration scheme for offenders who commit particular sexual crimes. Megan's Law also establishes a procedure for identifying those offenders who are likely to commit sexually violent crimes in the future. This sub-class of sexual offenders is called the sexually violent predator. 42 Pa. Cons. Stat. § 9795.4(a), (b). A sexually violent predator is defined as a person who, due to a

10

mental abnormality or personality disorder, is likely to engage in predatory sexually violent offenses. 42 Pa. Cons. Stat. § 9792. After a person is convicted of one of the Megan's Law crimes, but before he is sentenced, the State Sexual Offenders Assessment Board evaluates the offender's current and prior offense history, personal characteristics, and other factors reasonably related to the risk of reoffense to determine whether he or she should be classified as a sexually violent predator. 42 Pa. Cons. Stat. § 9795.4(b).

Sexually violent predators are subject to special requirements under Megan's Law. As stated above, they must register their residency and employment for life. 42 Pa. Cons. Stat. §§ 9795.1(b), 9795.4. In addition, schools and day care centers located in the municipality in which the sexually violent predator resides must be provided with written notice of the individual's presence. 42 Pa. Cons. Stat. § 9798(b)(3), (4). Similarly, schools located within one mile of the predator's residence, and colleges located with 1,000 feet of the predator's residence must also be given written notice. 42 Pa. Cons. Stat. § 9798(b)(3.1), (5). Sexually violent predators must participate in counseling while incarcerated, and even after they are released, at their own expense. 42 Pa. Cons. Stat. §§ 9718.1(a), 9799.4.

2.   <u>Probation and Parole</u>

In Pennsylvania, the probation and parole laws are administered by an independent administrative board known as the Pennsylvania Board of Probation and Parole. 61 P.S. § 331.2. The Board is charged with supervising, regulating, and providing services to individuals on probation or parole in the Commonwealth. 61 P.S. §§ 331.16b, 331.17. In fact, the Board has "exclusive power to supervise any person hereafter placed on probation or parole..." and to establish "uniform statewide standards" for said supervision. <u>Id</u>. The goal of Pennsylvania's system is to provide a uniform and exclusive system of supervising offenders, while protecting the public, giving the offender the opportunity to become a useful member of society, and diverting appropriate offenders from prison. 61 P.S. §§ 331.1, <u>et</u> <u>seq</u>.

In general, an offender may be released from confinement on parole where the Board of Probation and Parole determines that the best interests of the offender justify or require his release and it does not appear that the interests of the Commonwealth will be injured. 61 P.S. § 331.21(a). The Board retains the power to impose any special conditions or regulations on a particular parolee's release. 61 P.S. § 331.23. Likewise, courts are given discretion in fashioning the conditions of probation that are "reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty." 42 Pa. Cons. Stat. § 9754;

12

Commonwealth v. Walton, 397 A.2d 1179, 1184 (Pa. 1979) (conditions of probation, though significant restrictions on the offender's freedom, are primarily aimed at effecting, as a constructive alternative to imprisonment, his rehabilitation and reintegration into society as a law-abiding citizen).

A sexual offender subject to Megan's Law, including the sexually violent predator, is subject to special considerations before parole may be granted. For instance, the Board of Probation and Parole may request another assessment by the State Sexual Offenders Assessment Board prior to considering the offender's eligibility for parole. 42 Pa. Cons. Stat. § 9795.4(g). In addition, all sexually violent predators, and other offenders committing certain sexual crimes against minors, must serve a minimum term of imprisonment, complete counseling while incarcerated, and agree to attend counseling after release in order to be eligible for parole. 42 Pa. Cons. Stat. §§ 9718, 9718.1(a), (b).

All parolees must obtain approval of the residence to which he will be released from confinement and obtain written permission to make any change in residence. 37 Pa. Code § 63.4(2). Likewise, the conditions of probation may include residing in an approved residence, and notifying the supervising agent as to any change thereto. 42 Pa. Cons. Stat. § 9754. In fact, a proper pre-sentence investigation report includes information about

environments to which the offender might return or to which he could be sent should probation be granted. <u>Commonwealth v. Goggins</u>, 748 A.2d 721, 728 (Pa. Super. Ct. 2000).

## III. <u>DISCUSSION</u>

### A. <u>Summary Judgment Procedure</u>

As an initial matter, we must address the procedural posture of this case. Plaintiffs have objected to the fact that the County did not file a response to their statement of undisputed material facts. Nor, we note, has the County filed a statement of undisputed material facts in support of its cross motion for summary judgment. These deficiencies would normally put the County in violation of the local rules and this court's standard procedures regarding summary judgment motions. However, in this case, we find that the parties have adequately complied with the order we entered in this case [doc. no. 19]. Regardless of any procedural deficiencies, the court is able to rule on the dispositive state law issues.

In addition, plaintiffs have also characterized the County's inclusion of various state law issues, such as the scope of the County's authority to pass an ordinance with a criminal penalty and the ordinance's status as a zoning provision, as attempts to divert this court's attention from the preemption issue. We ascribe no wrongdoing to the County's presentation because these

are the exact issues that the court asked the parties to brief. However, because the preemption issue is dispositive, we need not address these other state law issues.

B.   Preemption of the Allegheny County Ordinance

We conclude that Allegheny County's sex offender residency restriction ordinance is preempted by state law.  The ordinance is contradictory to and inconsistent with various provisions of Pennsylvania law, including those laws governing sex offenders, sentencing, and probation and parole.  As such, the ordinance acts as an obstacle to attaining the full purposes and objectives of those state laws.  Furthermore, as will be demonstrated below, the ordinance compromises the interests of the wider constituency and forbids what state law allows.  For those reasons, the ordinance is invalid and unenforceable.

The ordinance directly and materially conflicts with state law, in terms of both policy and operational effect.  From a policy standpoint, the ordinance's stated objective is to protect children from subsequent crimes that may be committed by sexual offenders who are released into the community.   Nevertheless, the ordinance restricts the residency of offenders who, although they are required to register under Megan's Law, have never committed a sexual offense against a minor.  42 Pa. Cons. Stat. § 9795.1; 39-07-OR, § 275-01(F).  However, this fundamental policy objective, although telling

as to the intent behind the ordinance, is not of primary importance to our conflict preemption analysis.

Instead, the dispositive conflict is between the operational effect of the ordinance and Pennsylvania's uniform system of sentencing, parole, and probation. While, like the ordinance, the relevant Pennsylvania laws list public safety among their goals, they also list rehabilitation and reintegration of the offender, as well as avoidance of unnecessary incarceration. 61 P.S. § 331.1, et seq. Statewide uniformity in the supervision of parolees and probationers is also a primary goal of Pennsylvania's system. 61 P.S. §§ 331.16b, 331.17. Not only does the ordinance not include these latter goals, but it also directly contradicts and interferes with attaining them.

The ordinance stands as an obstacle to attaining the objectives of rehabilitating and reintegrating offenders and diverting appropriate offenders from prison by placing strict limits on the areas where they can live. The County's "Restricted Residency" map itself demonstrates the difficulty that an offender would have locating residential housing in a permitted area. The vast majority of the County, and virtually all of the City of Pittsburgh, falls within an area of restricted residency. In addition, there has been no dispute that the named plaintiffs in this case, as well as others pending in this court, have been forced to relocate established residencies under the ordinance. The same

pattern will inevitably occur as long as the ordinance is in place. Rehabilitation and reintegration depend on the creation and maintenance of a stable environment and support system, close to family ties, employment, and treatment options. See G.H. Twp. Of Galloway, 951 A.2d 221, 236 (N.J. Super. 2008). Pushing offenders out of the communities from which they came, and into outlying, unfamiliar suburbs interferes with the state's goals of rehabilitation and reintegration.

Moreover, there has been no dispute that many offenders have been refused release, even though they have been deemed eligible under Pennsylvania's probation and parole system, because housing cannot be located in compliance with the ordinance. This interferes with Pennsylvania's goals of rehabilitation and reintegration, but also interferes with its goals to divert appropriate offenders from incarceration. The conflict with state law is evident: where the state has decided that the offender is ready to return to his community, the County has placed a nearly insurmountable obstacle in the way of that return. For these reasons, the ordinance materially conflicts with and acts as an obstacle to achieving Pennsylvania's goals of rehabilitation, reintegration, and diversion. These conflicts support our ultimate conclusion that the ordinance is preempted by state law.

In addition, the ordinance conflicts with Pennsylvania's explicit objective to establish a uniform, statewide system for the

17

supervision of offenders on probation and parole. An offender asking a state parole agent to approve a home plan for a residence in Allegheny County is subject to a different standard than an offender asking that same state agent to approve a home plan for a residence in any of the surrounding counties. State parole agents must replace their uniform, statewide guidelines regarding approval of home plans with Allegheny County's directive. For instance, the statewide policy of the Board of Probation and Parole is to not approve residences for those convicted of sex offenses in which the victim is a minor if they are located within two blocks of a school day care facility, or playground. <u>State Parole and Parole Release Plans: What Inmates and Their Families Need to Know</u>, p. 4, available at www.pbpp.state.pa.us. That statewide policy no longer applies in Allegheny County. Thus, the ordinance materially conflicts with and acts as an obstacle to accomplishing the objective of uniformity in administering state probation and parole laws.

The ordinance also interferes with the state's interest in uniformity by replacing the determination of the Sexual Offenders Assessment Board as to an individual's risk of reoffense with a blanket restriction on the residency of all Megan's Law registrants who live in Allegheny County. As such, a sex offender who lives in, for example, Beaver County, and has been assessed by the Board to be a sexually violent predator, could be subject to less stringent restrictions on his residence than a Megan's Law registrant who has

18

been deemed by the state Board to pose no risk of reoffense, but who wishes to live in Allegheny County. The ordinance usurps the state Board's role of individually assessing the risk of reoffense of each Megan's Law registrant. As a result, the ordinance further interferes with the state's objective of applying uniform standards of supervision to sex offenders.

Moreover, the ordinance conflicts with state law by placing local interests above those of the wider constituency. There is no indication that Allegheny County faces any particularized challenges in the management of sex offender residency. Allegheny County has not even made such an assertion in the ordinance itself, or in this case. Rather, citizen concerns regarding sex offenders residing close to areas that children frequent are uniform throughout the state, and the country. Nevertheless, Allegheny County has attempted to address a statewide issue with local legislation.

The statewide nature of this issue is demonstrated by the ripple effect that would be caused by this ordinance. The ordinance pushes residents who, as a class have been deemed undesirable, to Allegheny County's outer borders, and presumably, preferably, into neighboring counties. If these same neighboring counties pass similar residency restrictions, which they most assuredly will do when faced with an influx of such new and undesirable residents and the inevitable constituency outcry that will result, the

ramifications would be felt throughout the state. The situation would ultimately impede the state's ability to effectively operate a statewide probation and parole system, leaving state parole agents with few options for the placement of offenders under their supervision. Because the broader interests of the Commonwealth are compromised by the ordinance, the ordinance must give way to state law.

Finally, the ordinance conflicts with state law by prohibiting that which state law allows. Under state law, even the most egregious offenders under Megan's Law -- sexually violent predators -- are permitted to live within 2,500 feet of a school, college, or day care center, provided the institution is directly notified of their presence. However, the ordinance would prevent that same person, and any Megan's Law registrant for that matter, from living in such places entirely.

Moreover, under state law, state parole agents review each offender's circumstances, background, and personal situation to determine the residence that will best meet the goals of public safety, rehabilitation, and reintegration. Sentencing courts engage in that same balance in determining the terms of probation, which may include residing in an approved residence. However, under the ordinance, this discretionary balancing called for by state law is replaced with a local directive that consists of nothing more than using a map to determine whether a residence is in a restricted zone

or not. Therefore, under the ordinance, the state parole agent's, or the court's, determination that a residence is most appropriate for an individual is set aside if it is located in a restricted area of Allegheny County.

As such, for both of these reasons, the ordinance conflicts with state law by forbidding what state law allows and is preempted for that reason as well.


IV. CONCLUSION

For the foregoing reasons, we predict that the Pennsylvania Supreme Court would find that Allegheny County's residency restriction ordinance is preempted by state law. Thus, the ordinance is invalid and unenforceable.


BY THE COURT,

_____, J.


cc: All Counsel of Record