```
                                )
CHARLES FROSS, et al.,          )
       Plaintiffs,              )
                                )
    v.                          )  Civil Action No. 08-1405
                                )
COUNTY OF ALLEGHENY,            )
       Defendant.               )
                                )
```

## MEMORANDUM

Gary L. Lancaster,                          January 25, 2012
Chief District Judge

This is a civil rights action in which a group of convicted sex offenders challenged the enforceability of an Allegheny County Ordinance that restricted their residency, as well as that of all such offenders. On March 20, 2009, we issued an opinion finding that the Ordinance was void and unenforceable because it was preempted by state law. Fross v. County of Allegheny, 612 F.Supp.2d 651 (W.D. Pa. 2009). The Court of Appeals for the Third Circuit has now affirmed that ruling and remanded the case for consideration of the issue of attorney's fees.

Plaintiffs have filed a Petition for Attorney's Fees in which they seek to recover those fees and costs incurred before this court, the Court of Appeals, and the Pennsylvania Supreme

Court.[1]  [doc. no. 39].  Plaintiffs ask for a total award of
$329,119.96.  For the reasons set forth below, we award
plaintiffs $324,504.96.

## I.  BACKGROUND FACTS

By this action, plaintiffs, a group of individuals who
had been convicted of sexual offenses and were required to
register under Megan's Law, 42 Pa. Cons. Stat. § 9791, et seq.,
sought to invalidate an Allegheny County Ordinance that
prevented them from living within 2,500 feet of any child care
facility, community center, public park, recreation facility, or
school.  Allegheny County Ordinance No. 39-07-OR.  Plaintiffs'
complaint sought a declaratory judgment that the Ordinance
violated various federal Constitutional rights pursuant to 42
U.S.C. § 1983, was contrary to the Fair Housing Act, 42 U.S.C. §
3601, et seq., was in reality a zoning law that violated the
Municipalities Planning Code, 53 P.S. § 10602 and the Second
Class County Code, 16 P.S. § 5220, and was preempted by the
Pennsylvania Sentencing Code, 42 Pa. Cons. Stat. § 9701 et seq.,
including Megan's Law and the Pennsylvania Probation and Parole

---

[1]  Neither party has discussed whether we have the authority to award fees for
proceedings before a state supreme court, but we find that we do given that
the proceedings occurred at the request of the Court of Appeals and were the
basis on which the Court of Appeals affirmed our decision. See Exeter-West
Greenwich Regional School District v. Pontarelli, 788 F.2d 47, 51-52 (1st
Cir. 1986) (citing Webb v. Board of Education of Dyer County, Kentucky, 471
U.S. 234 (1985)).

Board Law. [doc. no. 1]. Plaintiffs filed a motion for preliminary injunction immediately after commencing this case. [doc. no. 6].

After several conferences with counsel, the court consolidated plaintiffs' motion for a preliminary injunction with a decision on the merits, and directed both parties to file cross-motions for summary judgment on the dispositive state law issues. [doc. nos. 16, 18, 19]. In an opinion dated March 20, 2009, we held that the Ordinance was invalid and unenforceable because we predicted that the Pennsylvania Supreme Court would find that it was preempted by state law. Fross, 612 F.Supp.2d at 660. In that opinion, we explicitly stated that we had jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) and were addressing them first in accordance with the "fundamental and longstanding principle of judicial restraint requir[ing] that courts avoid reaching constitutional questions in advance of the necessity of deciding them." Id. at 653 n.2.

The County promptly appealed our ruling. [doc. no. 34]; Fross v. County of Allegheny, No. 09-2036 (3d Cir.). After hearing oral argument, the Court of Appeals for the Third Circuit filed a petition with the Pennsylvania Supreme Court seeking to certify the following question of law to that court:

> Is Allegheny County Ordinance No. 39-07-01
> [sic] entitled "Residence Requirements;
> Registered Sex Offenders" preempted by
> Pennsylvania statutory law and the procedures
> of the Pennsylvania Board of Probation and
> Parole?

[doc. no. 36 at 15]. In its petition, the Court of Appeals stated that this case raised "…important and unresolved questions…" regarding the legality of such residency restrictions, and was of "state-wide" and "substantial public" importance. [doc. no. 36 at 3-4, 11-12].

The Pennsylvania Supreme Court granted the petition. Following oral argument, that court answered the certified question in the affirmative, agreeing with the ruling this court made in March of 2009. Fross v. County of Allegheny, 20 A.3d 1193 (Pa. 2011). In response, the Court of Appeals requested letter briefs addressing the effect that the Pennsylvania Supreme Court's ruling had on the appeal pending before it. Thereafter, the Court of Appeals entered judgment affirming our March 20, 2009 order and remanding the case for determination of the issue of attorney's fees and costs, both before this court and the Court of Appeals. [doc. nos. 37, 38, and 41]; see also, Fross v. County of Allegheny, 438 Fed. Appx. 99 (3d Cir. 2011).

Plaintiffs now seek in this court an award of $328,212.50 in attorney's fees and $907.46 in costs, representing amounts incurred through the filing of their reply

4

brief in support of the petition for attorney's fees. [doc. no. 45 at 22].

## II.   LEGAL AUTHORITY

### A. Awarding Attorney's Fees Under Section 1988 - General Law

"Our legal system generally requires each party to bear his own litigation expenses, including attorney's fees, regardless whether he wins or loses." Fox v. Vice, ___ U.S. ___, 131 S.Ct. 2205, 2213 (2011). However, Congress has created an exception to that rule by authorizing district courts to engage in fee shifting in certain civil rights cases. 42 U.S.C. § 1988; Fox, 131 S.Ct. at 2213. Section 1988(b) states that where a party prevails in an action brought to enforce one of a specifically enumerated list of federal statutes, including section 1983, that party may recover a reasonable attorney's fee. 42 U.S.C. § 1988(b).

A reasonable fee is that which is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. Perdue v. Kenny A., ___ U.S. ___, 130 S.Ct. 1662, 1672 (2010). As such, the purpose of section 1988(b) is to ensure "effective access to the judicial process" for persons whose civil rights have been violated, to reimburse plaintiff for the cost of vindicating his civil rights, and to hold the violator of federal law accountable.

5

Hensley v. Eckerhart, 461 U.S. 424, 429 (1983); Fox, 131 S.Ct. at 2213 (citations and quotations omitted).

The prevailing party bears the burden of establishing entitlement to an award of attorney's fees and of documenting the hours worked and the appropriate hourly rate. Hensley, 461 U.S. at 437. The product of the number of hours worked multiplied by the hourly rate, called the lodestar amount, is the starting point in awarding attorney's fees. Hensley, 461 U.S. at 433; Perdue, 130 S.Ct. at 1673.

The party requesting the fee award must document the number of hours worked "with sufficient specificity to allow the District Court to determine whether the hours claimed are unreasonable for the work performed." Evans v. Port Authority of New York and New Jersey, 273 F.3d 346, 361 (3d Cir. 2001) (citation omitted). The opposing party may challenge this factor in the lodestar calculation by clearly setting forth both the type of work being challenged and the grounds for contending that the hours are unreasonable. Interfaith Community Organization v. Honeywell Int'l, Inc., 426 F.3d 694, 713-14 (3d Cir. 2005) (internal quotations and citations omitted).

The party requesting the fee award must also establish that the charged hourly rate is reasonable based on "the community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity." Evans,

6

273 F.3d at 360-61 (citing Student Public Interest Research Group v. AT&T Bell Laboratories, 842 F.2d 1436, 1450 (3d Cir. 1988)). An opposing party can contest the claimed hourly rate, but must do so with "appropriate record evidence." Id. at 361. In the absence of such evidence, plaintiff must be awarded attorney's fees at the requested rate. Id.

Although the court can only act in response to a specific objection and cannot decrease a fee award based on factors not raised at all by the adverse party, the court nevertheless has a positive and affirmative duty to conduct a thorough and searching analysis to identify excessive, redundant, or otherwise unnecessary charges. Interfaith Community, 426 F.3d at 711, 713 (internal quotations and citations omitted); see also, McKenna v. City of Philadelphia, 582 F.3d 447, 459 (3d Cir. 2009).

Once the proper lodestar amount has been calculated, the court must then consider other factors, such as the "results obtained" in fashioning an award of fees that is reasonable and appropriate. Hensley, 461 U.S. at 433-34; Lima v. Newark Police Department, 658 F.3d 324, 333 (3d Cir. 2011) (the degree of overall success goes to the reasonableness of the award, not to its availability). The court's decision, which is to be given "substantial deference" on appeal, "may take into account [its]

overall sense of a suit," but must still be based on record evidence. Fox, 131 S.Ct. at 2216.

Although this court must follow these standards and give careful consideration to any petition for an award of attorney's fees under section 1988(b), the Supreme Court has cautioned that a petition for attorney's fees "should not result in a second major litigation" and has advised that the goal in awarding fees "is to do rough justice, not to achieve auditing perfection." Fox, 131 S.Ct. at 2216.

## B. Awarding Attorney's Fees in Cases Asserting Both Fee Generating and Non-Fee Generating Claims

Although the language of and policy behind section 1988(b) is straightforward, "…litigation is messy, and courts must deal with this untidiness in awarding fees." Fox, 131 S.Ct. at 2214. One instance in which the award of attorney's fees becomes complicated is where a plaintiff brings both federal claims pursuant to a statute that is listed in section 1988(b), as well as state law claims, for which section 1988(b) does not authorize an award of attorney's fees. 42 U.S.C. § 1988(b). In such an event, the federal claim is referred to as a fee generating claim, and the state claim is referred to as a non-fee generating claim.

8

Although the combination of federal and state claims in one lawsuit complicates an award of attorney's fees, the rule we must apply in such circumstances is clear: a plaintiff is entitled to an award of attorney's fees under section 1988(b) where he has succeeded on a non-fee generating claim and the fee generating claim remains unadjudicated, is substantial, and either arises out of a "common nucleus of operative fact" or is based on related legal theories. Smith v. Robinson, 468 U.S. 992, 1005 (1984); Maher v. Gagne, 448 U.S. 122, 133 n.15 (1980); Jama v. Esmor Correctional Services, Inc., 577 F.3d 169, 177 nn.9 & 10 (3d Cir. 2009); Luria Brothers & Co. v. Allen, 672 F.2d 347, 356-58 (3d Cir. 1982). [2]

This rule was established to prevent a successful plaintiff from being denied an award of attorney's fees because a court has acted in accordance with the principle that it should avoid deciding a case on constitutional grounds where a non-constitutional claim is dispositive. See H.R. Rep. No. 94-1558, 94th Cong., 2d Sess. 4 n.7 (1976).

---

[2] Curiously, the County does not acknowledge that this body of case law exists. [doc. no. 42 at 2-3]. Instead, the County argues only that because this case was decided on state law preemption grounds, which are not listed in section 1988(b), plaintiffs are not entitled to any award of attorney's fees. This analysis is incomplete, and incorrect.

9

## III. DISCUSSION

### A. Is an Award of Attorney's Fees Appropriate?

As stated above, plaintiffs asserted various federal and state law claims in their complaint. The section 1983 claim was a fee generating claim. However, no court issued any decision on the section 1983 claim. Instead, plaintiffs succeeded on the non-fee generating state law preemption claim before this court, the Pennsylvania Supreme Court, and the Court of Appeals for the Third Circuit. As such, we must apply the rule stated above, and determine whether the fee generating section 1983 claim remains unadjudicated, is substantial, and either arises out of a "common nucleus of operative fact" or is based on related legal theories. We find that plaintiffs' section 1983 claim meets all criteria. Therefore, plaintiffs are eligible for an award of attorney's fees in this case.

Plaintiffs' fee generating claim remains unadjudicated. This court, the Court of Appeals, and the Pennsylvania Supreme Court considered only state law issues. In fact, we explicitly directed the parties to file cross-motions for summary judgment limited to the state law issues and rendered a decision based only on the preemption issue. The Court of Appeals certified the state law preemption issue to the Pennsylvania Supreme Court. Throughout the course of this litigation, no court has given any consideration to plaintiffs'

remaining claims, including the fee generating section 1983 claim. As such, the fee generating claim remains unadjudicated. Therefore, the first factor has been met.

Next, we are to decide whether the fee generating claim was substantial. This factor prevents litigants from joining a frivolous fee generating claim with non-fee generating claims in order to manufacture an entitlement to attorney's fees. However, where a fee generating claim is sufficiently meritorious to confer jurisdiction on the district court, and in turn to support the exercise of the court's jurisdiction over related state law claims, the substantiality test has been met. Hagans v. Lavine, 415 U.S. 528, 536-37 (1974); Seaway Drive-in, Inc. v. Township of Clay, 791 F.2d 447, 452 (6th Cir. 1986).

In this case, plaintiffs' federal claims were sufficient to invoke this court's federal question jurisdiction. In addition, we explicitly stated in our March 20, 2009 opinion that the federal claims were sufficient to support the exercise of our jurisdiction over the related state law claims that plaintiffs also pled in their complaint. Fross, 612 F.Supp.2d at 653 n.2. As such, under the authority cited above, the fee generating section 1983 claim was substantial. Therefore, the second factor has been met.

The final factor that we must consider is whether the adjudicated non-fee generating claim and the unadjudicated fee generating claim either arise out of a "common nucleus of operative fact" or are based on related legal theories. The facts related to the passage, operation, enforcement, and effect of the Allegheny County Ordinance were common to both the section 1983 claim and the state law preemption claim that was ultimately decided. Moreover, although the section 1983 claim and the preemption claim were different legal causes of action, they were not entirely unrelated. For instance, both legal theories shared a determination that the County Ordinance imposed restrictions and punishments on offenders who were otherwise eligible for release under state law. Because the two claims arose out of a common nucleus of operative fact and were based on related legal theories, we find that the final factor has been met.

Because plaintiffs have met all the requirements set forth by the Supreme Court for cases in which fee generating claims are pled with non-fee generating claims, we conclude that plaintiffs are entitled to an award of attorney's fees pursuant to section 1988(b).

12

## B. What is the Proper Amount of Attorney's Fees?

Having determined that plaintiffs are eligible for an award of attorney's fees pursuant to section 1988(b), we must next determine the appropriate amount of the award. In making this determination, we begin by finding the product of the number of hours worked and the hourly rate, or the lodestar amount, which is presumed to be a reasonable award. Hensley, 461 U.S. at 433; Perdue, 130 S.Ct. at 1669, 1673; City of Burlington v. Dague, 505 U.S. 557, 562 (1992). We may then adjust the lodestar amount to arrive at a fee award that is both reasonable and appropriate based on our consideration of the results obtained, and our overall sense of the suit. Fox, 131 S.Ct. at 2216; Lima, 658 F.3d at 333.

Plaintiffs have submitted detailed billing reports, that list the hours worked and the rates charged. Plaintiffs assert that these billing reports already reflect the exercise of billing judgment, i.e., the removal or reduction of hours worked that were either duplicative or unnecessary and would not be charged to private clients in the ordinary course of business. Plaintiffs have also submitted statements from practitioners in the Pittsburgh area attesting to the reasonableness of the hourly rates used in calculating the lodestar. The product of the lodestar calculation in this case

13

is \$328,212.50, which includes the fees incurred to prepare plaintiffs' reply brief in support of the instant motion.

The County objects to both the number of hours worked and to the hourly rates used. As an initial matter, and before proceeding with our review, we question whether the County's objections rise to the level of specificity required to assert a valid objection to a petition for attorney's fees under prevailing case law. Interfaith Community, 426 F.3d at 713-14; Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990); Bell v. United Princeton Prop., Inc., 884 F.2d 713, 720 (3d Cir. 1989). Despite this, we have nonetheless considered the County's objections on the merits.

## 1. The Number of Hours Worked Factor

The County objects to the number of hours worked on the ground that they are "inherently 'duplicative and excessive'" given the "number of attorneys seeking fees," that "the number of hours total[s] 744.35," and because the filings required in this case were "quite limited." [doc. no. 42 at 4-5]. The County's brief does not include a single citation to the billing records attached to plaintiffs' petition, a single reference to a particular time entry that is being objected to, or any identification of what hours the court should disallow before calculating the lodestar. The County also objects to the

14

inclusion of hours billed by associates working for Attorney Strassburger because those attorneys were not identified on the docket. Notably, again, the County does not identify who those attorneys are, how many hours they billed, what dates they worked, or what tasks they performed.

As an initial matter, we do not find the number of filings made to be determinative of the reasonableness of the total number of hours expended on a case. This case, which the County describes as not "complex" and "quite limited," was described by the Court of Appeals for the Third Circuit as a case raising "…important and unresolved questions…" that had substantial state-wide public importance. This case prompted the Court of Appeals for the Third Circuit to ask the Pennsylvania Supreme Court to certify a question of law. This case further prompted the Pennsylvania Supreme Court to grant that petition in order to make a ruling with state-wide precedential effect. The fact that the only "necessary filings [were] a Complaint, a couple of Motions, a Brief in the Third Circuit and a similarly styled Brief in the Pennsylvania Supreme Court" severely understates the importance and complexity of this case. [doc. no. 42 at 5].

Instead, we find that plaintiffs' attorneys conducted extensive factual and legal research into their claims, and then ably raised, briefed, and argued significant questions of both

15

state and federal law in their complaint and preliminary injunction motion and brief. Both the Court of Appeals for the Third Circuit and the Pennsylvania Supreme Court considered one state law issue to be significant enough to warrant adjudication by the body with precedential authority over the entire Commonwealth. Plaintiffs participated in not one, but two, appeals from our March 20, 2009 summary judgment decision, and ultimately secured a favorable ruling with state-wide application. The County's attempts to devalue and trivialize this case ring hollow and provide no basis on which to reduce the number of hours factor of the lodestar calculation.

As pointed out above, the County has made no other particularized objection to any of the hours recorded by the billing attorneys even though it is the County's duty to object with specificity. Nevertheless, we have fulfilled our judicial duty to independently examine the fee petition and the accompanying time records to determine whether any hours worked are excessive, redundant, or unnecessary, as alleged, albeit generally, by the County.

First, we find that the total number of hours expended is not inherently unreasonable given the complexity and importance of this case, the breadth of the legal issues raised therein, and the number of years, and forums, in which this case was pending. Similarly, we do not find the fact that more than

16

one attorney worked on the same pleadings and briefs to be an inherent indication of duplicative efforts. The time records reflect that there was some division of labor according to substantive subject matter. Moreover, the involvement of different attorneys in the drafting and editing process resulted in high quality, thorough, and well developed work product that was of assistance to the court.

Second, although we find the time records, overall, to be in good order and to reflect proper and valid billing practices, we have identified limited anomalies and unnecessary duplication of effort. For instance, the time records reflect that Attorneys Strassburger, Rose, and Driscoll all attended the oral argument of this case before the Pennsylvania Supreme Court on October 19, 2010. According to the records, Attorney Driscoll is the only attorney who argued the case. Although Attorneys Strassburger and Rose no doubt wished to be at the argument to witness the culmination of their efforts on this case, the client would not ordinarily pay for their presence. As such we will deduct 3.0 hours of Attorney Strassburger's time (3 x $350 = $1,050), and 1.0 hour of Attorney Rose's time (1 x $325 = $325).

Next, we note that Attorney Walczak's time records indicate charges of $550 for work performed on January 22, 2008 and $1,850 for work performed on September 24, 2008, but include

no hours worked on either occasion. We could certainly deduce the number of hours worked given his hourly rate of $500, however, have decided to deduct these hours in their entirety due to this apparent anamoly. ($550 + $1,850 = $2,400).

We now turn to the County's objection to Attorney Strassburger's inclusion of associate time in his time records. Although associates billed time to the project, as reflected in Attorney Strassburger's the time records, plaintiffs did not actual include the 7.4 hours of associate work in their calculation of the lodestar. [See doc. no. 39 at 16]. Because the associate hours were not included in the requested lodestar, we will not reduce the lodestar amount on that basis.

Finally, although plaintiffs asserted in their briefing that they did not bill for responding to media inquiries, Attorney Strassburger includes a time entry on May 26, 2011 for doing just that, among other tasks. [doc. no. 39 at ¶ 54]. Because there is no indication in the time record specifying how much time was spent on media inquiries, and how much time was spent on the other tasks, we are disallowing the entire 2.4 hours (2.4 x $350 = $840).

In conclusion, as a result of our independent review of the time records in response to the County's general objection to the number of hours worked factor on the ground that the hours were duplicative and excessive, we find a total

of 5.4 hours of Attorney Strassburger's time to be unwarranted
and duplicative; 1.0 hour of Attorney Rose's time to be
duplicative; and two of Attorney Walczak's time entries, for a
total of $2,400, to be improperly supported. Using the hourly
rates set forth by plaintiffs, which we find below to be
reasonable, we will reduce the requested lodestar by $4,615.00.

## 2. The Hourly Rate Factor

The County also objects, although again only generally
and without any evidentiary support, to the hourly rates
plaintiffs used to calculate the lodestar. The hourly rates
reflected on the billing records are: Attorney Strassburger -
$350; Attorney Driscoll - $475; Attorney Walczak - $500; and
Attorney Rose - $325. The County alleges that these rates are
"excessive and unreasonable." [doc. no. 42 at 5]. According to
the County, Attorney Strassburger cannot use the rate he
typically charges his private clients because this was not a
complex case. The County further contends that the public
interest attorneys either cannot recover any fees at all because
they do not typically charge their clients, or cannot use a rate
that exceeds those that were recently found to be reasonable in
Codepink Women for Peace v. U.S. Secret Service, 2010 WL 2196262
at *4 (W.D. Pa. Jun. 1, 2010).

19

As an initial matter, Attorney Strassburger has provided sufficient support for his hourly rate of $350. This is the rate that he typically charges clients, and it is supported by evidence from practitioners attesting to its reasonableness. The County's contention that this case was not complex enough to justify the rate is utterly baseless. We will use that hourly rate in calculating the lodestar.

Turning now to the public interest attorneys, because they do not charge clients for their services, we must determine what a reasonable prevailing market rate would be for their services. Blum v. Stenson, 465 U.S. 886, 895 (1984). The County is correct that an hourly rate of $275 was deemed reasonable for Attorney Rose in Codepink, while an hourly rate of $450 was deemed reasonable for Attorney Walczak. Here, the hourly rates being used are $325 and $500, respectively. Simply put, the ACLU attorneys are each seeking a $50 increase in their hourly rate since the Codepink case was decided about eighteen months ago. The ACLU attorneys have supported their use of an increased hourly rate via declarations from practitioners and public reports regarding the increase in attorneys' billing rates during this time period. Because we are to consider the prevailing market rate at the time the fee award is made, not at the time the case was filed, the fact that Codepink was filed after this case is immaterial. Lanni v. New Jersey, 259 F.3d

146, 149-150 (3d Cir. 2001). We conclude that plaintiffs have provided adequate support to justify the reasonableness of the hourly rates being charged by both Attorney Rose and Attorney Walczak, including a $50 increase over those rates deemed reasonable in Codepink.

Finally, we find that plaintiffs have provided sufficient evidence to support the reasonableness of Attorney Driscoll's hourly rate of $475. The County's blanket assertion that the rate is "excessive and unreasonable" because Attorney Driscoll is departing from his normal practice of charging $0 (because he is a public interest attorney) is nonsensical. It is also, again, not supported by any record evidence. On the other hand, plaintiffs have provided sufficient evidentiary support to establish that the hourly rate is reasonable in the relevant legal market.

Therefore, we find no valid basis on which to reduce any of the hourly rates used in calculating the lodestar.

### 3. The Lodestar Calculation

Based on the above, the lodestar in this case is $323,597.50 ($328,212.50 (requested lodestar) - $4,615.00 (representing hours disallowed)). We must now consider whether we should adjust this amount, either upward or downward. Again, the County has addressed this factor in only a cursory fashion,

by doing no more than restating the general legal principle that
"a lodestar amount should be reduced based on the limited
success of the litigation," without any argument, factual or
legal, addressed to this particular case [doc. no. 42 at 4].
Despite these deficiencies, we have nevertheless considered the
County's argument. We find no basis on which to reduce the
award of fees based on the success of this litigation, or any
other factor.

These plaintiffs achieved a high level of success.
Through their attack on a single county's ordinance, they
succeeded in establishing legal precedent with state-wide
effect. Municipalities throughout the Commonwealth are either
repealing similar ordinances or postponing passage of the same
pending review of the Pennsylvania Supreme Court opinion. See
Bill Wellock, Edwardsville Repeals Sex Offender Ordinance,
CITIZENVOICE.COM (Jan. 19, 2012, 12:34 p.m.),
http://citizenvoice.com/news/edwardsville-repeals-sex-offender-
ordinance-1.1242705#axzz1jvSMgx5F; Cindy Cusic Micco, Law
Drafted to Limit Where Sex Offenders Can Live In Pine Township:
Supervisors Table Draft of Ordinance to Allow More Time for
Research, PINE-RICHLAND PATCH, (Jan. 19, 2012, 12:31 p.m.),
http://pine-richland.patch.com/articles/law-drafted-to-limit-
where-sex-offenders-can-live-in-pine-township.

Therefore, we find the adjusted lodestar amount of $323,597.50 to reflect an award of attorney's fees that is reasonable, appropriate, and sufficient to induce a capable attorney to undertake the representation of this meritorious civil rights case. We also award the total costs sought pursuant to section 1988(b) as we find the postage fees, on-line research fees, and filing fee to be reasonably incurred and typically charged to private clients. Thus, the total award in this case is $324,504.96 ($323,597.50 (adjusted lodestar) + $907.46 (costs)).

IV. CONCLUSION

For the foregoing reasons, we make a total fee award in the amount of $324,504.96 pursuant to section 1988(b). An appropriate order will be filed contemporaneously with this opinion.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

```
                                )
CHARLES FROSS, et al.,          )
        Plaintiffs,             )
                                )
   v.                           )    Civil Action No.  08-1405
                                )
COUNTY OF ALLEGHENY,            )
        Defendant.              )
                                )
```

ORDER

AND NOW, this **25th** day of January, 2012, IT IS HEREBY
ORDERED that plaintiffs' petition for attorneys' fees and costs
[doc. no. 39] is GRANTED WITH MODIFICATION. Based on the
memorandum filed contemporaneously with this order, plaintiffs
may recover costs in the amount of $907.46 and attorneys' fees
in the amount of $323,597.50 from defendant County of Allegheny.

BY THE COURT,

C.J.

cc:  All Counsel of Record